UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| PERCY COLLINS, JR., : | |
| : | |
| Plaintiff, : | |
| : | Case No. 3:16cv00074 |
| vs. : | |
| : | |
| CAROLYN W. COLVIN, : | District Judge Walter H. Rice |
| Commissioner Of The Social : | Magistrate Judge Sharon L. Ovington |
| Security Administration, : | |
| : | |
| Defendant. : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Percy Collins, Jr. brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. Plaintiff applied for benefits due to his health problems, including a stroke he might have suffered, multiple sclerosis, degenerative disk disease in his spine, and depression. He asserted that his health problems constituted one or more disabilities beginning on April 29, 2013, thus triggering his eligibility for benefits. The Administration's decision to deny his application was made in November 2014 by Administrative Law Judge (ALJ) Gregory G. Kenyon, who determined that Plaintiff was "not disabled" within the meaning of the Social Security Act. (Doc. #6, *PageID*#s 69-82).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings the present case challenging ALJ Kenyon's decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Brief (Doc. #10), Plaintiff's Reply (Doc #11), the administrative record (Doc. #6), and the record as a whole.

## II.     Plaintiff's Vocational Profile and Testimony

Plaintiff was forty-eight years old on the date he filed his application for benefits. This placed him the category of a younger person under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). ALJ Kenyon concluded that Plaintiff has at least a high school education. In the past, he worked as a forklift operator, a parking attendant, and a sewer-maintenance worker.

Plaintiff testified at his administrative hearing before ALJ Kenyon, in August 2014, that he was not married and had eight children. His children do not live with him.

Plaintiff testified that he had a stroke in April 2013. The continuing effects from the stroke involve left-side weakness that prevents him from lifting his left foot. He noted, "I have to drag it." (Doc. #6, *PageID* #95). He also has difficulty when he grabs something with his left hand—he does not know when he releases it. For example, when he picks up clothes and walks with them, his left hand will release and he drops them. Soon there are "clothes all over the place." *Id*. at 96. He also drops coffee cups and plates. He can't smoke indoors because he "burnt the carpet up." *Id*. The stroke also left him with difficulty hearing and memory problems. If he does not write down things he needs to remember, he will forget within two or three days.

Plaintiff described the effects of multiple sclerosis to constant fatigue, making it difficult for him to get out of his bed when he wakes up. If he needs to use the bathroom and can't immediately get up, he will roll onto the floor, then crawl to the bathroom. *Id*. at 97. About three times during the day, he lies down for thirty to forty minutes. Sometimes he falls asleep while lying down. Multiple sclerosis also makes his neck and back sensitive to heat from the sun. *Id*. at 98. His neck is so sensitive that he can't wear any jewelry. His sensitivity also prevents him from wearing earrings and sometimes requires him to take off his glasses. He also explained, "if I put a hat on, it seems like … I've got something on my neck that's choking me." *Id*. He takes Avonex[1] to treat his multiple sclerosis; it has helped him do certain things—like go to sleep—that he could not do previously do. Yet, Avonex causes him headaches three or four times a week. *Id*. at 102-03.

Plaintiff testified that he's had low-back pain since 2005 or 2006. The pain extends to his legs. It is a sharp pain that feels like he's being stuck with a pin. Sometimes it is an aching pain. Every now and then the intensity of this pain will reach the level of ten, on a scale of zero (least pain) to ten (most pain). When his pain moderates, it is "like an eight, constant." *Id*. at 99. He takes Vicodin for pain; it helps a little. He has trouble bending at the waist. If he bends over, it seems to him that he gets stuck. He then needs to push with his hands to return to a straight position. *Id*. at 104.

---

[1] "Avonex is approved by the U.S. Food and Drug Administration (FDA) for the treatment of patients with relapsing forms of MS to slow the accumulation of physical disability and decrease the frequency of clinical exacerbations." http:www.nationalmssociety.org/Treating-MS/Medications/Avonex

As to Plaintiff's other physical abilities and limits, he can lift up to ten pounds on a good day, but can't lift any weight on a bad day. He can stand for up to 10 minutes and maybe walk a couple of blocks. He has difficulty climbing stairs but not descending.

Plaintiff further testified that he had developed depression. He cannot do a lot of things with his two small children; this depresses him. At times during the administrative hearing, Plaintiff became upset and started to cry. He cries when he is home, if he thinks about the things he cannot do.

### III. Medical Opinions

#### A. Treatment Records

Hospital records show that Plaintiff went to the emergency room in April 2013 with left-arm numbness and pain, left-hand numbness, and leg numbness. (Doc. #6, *PageID* #314, 324. 326). His gait was ataxic (evidencing "defective muscle coordination"[2]), "regarding his left foot unable to walk on heel without listing to one side." *Id*. at 324. He was able to walk only on the tiptoes of his left foot. *Id*. at 326. He obtained some relief from left-arm pain by lifting his left arm above his head. *Id*. CT scans of Plaintiff's head and cervical spine showed no abnormalities. *Id*. at 317. But, an MRI of his cervical spine showed early demyelinating changes with no evidence of a cerebral infarct. *Id*. at 334. An MRI of the lumbar spine revealed discogenic changes most notable at L3-4 and L4-5 with broad-based circumferential disc bulge encroaching on the exiting nerve roots, likely encroaching on the L3 and L4 nerve roots bilaterally. *Id*. at 344.

---

[2] Taber's Cyclopedic Medical Dictionary, p. 182 (19th Ed. 2001).

On July 2, 2013, Plaintiff met with neurologist Nina Bradley, D.O. *Id*. at 487-88. Dr. Bradley's physical examination revealed left-foot drop, left-arm pain, back pain and numbness, and neck pain. Plaintiff reported a shooting and tingling sensation down his arm along with left-sided numbness, weakness, and tingling. A motor exam was 4+/5 on the left-upper extremity and 3/5 on the left-lower extremity. He also had decreased sensation to pinprick and light touch in the deltoid region. He was unable to walk in a straight line. *Id*.

Dr. Bradley's diagnostic impression was "[l]eft hemiparesis and sensory change, likely secondary to demyelinating disease, specifically a relapsing form of multiple sclerosis." *Id*. at 488. Dr. Bradley's progress notes in late July 2013 indicate that she spoke with Plaintiff about the results of a lumbar puncture as looking "more like demyelinating disease…." *Id*. at 480.

Progress notes written by Abdul Shahid, MD, at a pain clinic in November 2013 state that Plaintiff's multiple sclerosis was stable at that time. He was receiving Interferon therapy, referring to his treatment with Avonex. *Id*. at 446. Plaintiff reported chronic pain in his neck, lower back, and bilateral knees. He further reported that he was unable to walk up and down stairs, bend down to pick things up, and stand or walk for a long distance. He rated his pain level at eight out of ten and described the pain as aching, burning, and constant, with numbness. His pain worsened with bending and using his arms or legs, and his pain improved with resting or taking medications. *Id*. Dr. Shahid's physical examination showed that Plaintiff had limited flexion, extension, and rotation of the lumbar spine along with a painful response to deep palpation. *Id*. at 447.   Dr.

5

Shahid diagnosed Plaintiff with lumbar degenerative disc disease and thoracic/lumbar radiculitis. *Id*.

Treatment notes from June 2014 indicated that Plaintiff's "brain images are not particularly impressive." *Id*. at 502. The notes report that a past MRI of Plaintiff's cervical spine revealed an episode of transverse myelitis. *Id*. The notes continue, "It was possible that these lesions represented idiopathic transverse myelitis rather than true multiple sclerosis." *Id*.

However, just one month later—in late July 2014—an MRI of Plaintiff's brain demonstrated a stable appearance of previously documented white matter changes, consistent with his history of multiple sclerosis. *Id*. at 621-22.

In September 2014, an EMG of Plaintiff's upper extremities was "abnormal … with evidence of a primarily demyelinating mononeuropathy of the ulnar nerve across the elbow bilaterally…." *Id* at 626.

### B.     Dr. Bradley's Opinions

Dr. Bradley provided her opinions on two occasions. The first occurred in August 2013 by way of a Basic Medical form she completed. *Id*. at 532-33. Dr. Bradley identified Plaintiff's medical conditions to include relapsing remitting multiple sclerosis. She noted that the onset of his MS symptoms occurred in 2013, and his treatment for MS began with Avonex in October 2013. She believed his prognosis was good. She explained, "In the case of exacerbation …," he may require three to five days of intravenous steroids. *Id*. at 532.

On exam by Dr. Bradley, Plaintiff "has sensory changes on left upper & lower extremity. Mild weakness of left upper & lower extremity. Minimal gain instability." *Id*. Dr. Bradley opined that Plaintiff was moderately limited in his ability to push or pull, reach, handle, or perform repetitive foot movements. *Id*. at 532 And, Dr. Bradley explained that during an MS exacerbation, he "may have worsening arm or leg weakness. Usually with Treatment (i.e., IV steroids) these symptom will resolve in 1-2 weeks. Currently, [he] has upper extremity paresthesis, and left side weakness." *Id*.

Dr. Bradley provided her second set of opinions in February 2014 in a form that asked her to provide her medical assessment of Plaintiff's ability to do work-related activities. *Id*. at 450-54. Dr. Bradley opined that Plaintiff could not lift more than ten pounds due to his left-side "weakness/numbness [with] MRI of the cervical spine lesion." *Id*. at 450-51. She thought Plaintiff could stand and walk up to two hours out of an eight-hour workday and for 30 minutes without interruption. He could sit for eight hours during a workday. Dr. Bradley observed that Collins could perform sedentary work but would be absent from work on average about twice a month because of his impairments or treatment. *Id*. at 454.

C. **Dr. Oza's Opinions**

Amita Oza, MD, examined Plaintiff in July 2013 at the request of the State agency. (Doc. #6, *PageID* #s 437-39). Plaintiff reported to Dr. Oza that his left side was "functioning at 70% of his right side." *Id*. at 437. He also told Dr. Oza that he could do things with his left hand but could drop things at any time. *Id*. He also described back pain for many years, which came and went but usually lasted for two to three days with

7

radiation behind both his thighs. *Id*. His pain worsened when he sat or stood for more than forty minutes or walked for more than one hour. *Id*. at 437.

On physical examination, Plaintiff's grip strength was slightly diminished on the left side compared to the right side. *Id*. at 438. Dr. Oza estimated Plaintiff's muscle power at "5 on the right side and 4+ to 5 on the left but there was a distinct difference." *Id*. Dr. Oza observed a slight rigidity in Plaintiff's left lower extremity, and he walked with slight dragging of his left foot. The range of motion in Plaintiff's joints was normal. "Reflexes were 1+ on the right and 2+ on the left." *Id*. There was tenderness on palpation of Plaintiff's dorsolumbar spine. *Id*.

Dr. Oza concluded that "signs are suggestive of right-sided CVA [cerebral vascular accident, *i.e.,* stroke] with residual left-sided weakness," but tests so far had been negative. *Id*. at 439. Dr. Oza recognized that Plaintiff had back pain and an MRI abnormality of disk bulge at L4-L5 level bilaterally. *Id*. Clinically, there was no neurosensory deficit. *Id*. In the end, Dr. Oza wrote, "Based on my findings today due to above mentioned problems, work-related activity seems to be affected at this time, though he continues to use his money for marijuana, drinking, and smoking." *Id*.

**IV.  The Social Security Act and ALJ Kenyon's Decision**

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements. Chief among these is the disability requirement. To receive Supplemental Security Income, an applicant must be a "disabled individual." 42 U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). A "disabled individual"—as defined by the Social Security Act—is someone

living with a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

ALJ Kenyon reviewed the evidence under the five-step sequential evaluation procedure mandated by Regulation. 20 C.F.R. § 416.920(a)(4). His more pertinent findings began at step two where he found that Plaintiff had the severe impairments of multiple sclerosis, lumbosacral degenerative disc disease, depression, and a history of cannabis abuse. (Doc. #6, *PageID* #71). The ALJ further found, "Not only does the objective, medical evidence fail to establish that the claimant had a stroke, but there is insufficient evidence to consider post-stroke residual effects as a severe impairment…. [I]t is more likely that the claimant's complaints of weakness are attributable to multiple sclerosis or transverse myelitis…." *Id*. at 72.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of one in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 72-74. At step four, the ALJ assessed Plaintiff's Residual Functional Capacity or the most he could do despite his impairments. *See Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002). He found that Plaintiff could perform sedentary work subject to twelve limitations:

> (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) occasional use of the lower extremities for pushing, pulling, and operating foot controls; (6) frequent use of the left upper extremity for reaching, handling, and fingering; (7) no concentrated

9

> exposure to extreme heat; (8) limited to performing unskilled, simple, repetitive tasks; (9) occasional contact with coworkers, supervisors, and the public; (10) no fast paced production work or strict production quotas; (11) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next; and (12) no occupational exposure to drugs or alcohol.

(Doc. #6, *PageID* #74).  Also at step four, ALJ Kenyon found that Plaintiff had no past relevant work experience.

At step five, the ALJ concluded that—considering Plaintiff's age, education, work experience, and residual functional capacity—he is capable of making the adjustment to work that exists in significant numbers in the regional and national economy, including document preparer, circuit board assembly screener, and stuffer.  *Id*. at 82.  In this manner, ALJ Kenyon found, as noted previously, that Plaintiff was not under a benefits-qualifying disability.

**V.**     **Standard of Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence

10

standard is met— that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

## VI. Discussion

Plaintiff contends that the ALJ failed to comply with the Regulations applicable to his evaluation of the opinions provided by Dr. Bradley, his treating neurologist. Plaintiff raises three main points: (1) the record contains no medical-source opinion contrary to Dr. Bradley's; (2) the ALJ failed to conduct the two–step evaluation procedure mandated by the Regulations; and (3) the ALJ erred by essentially disagreeing with Dr. Bradley based on his (the ALJ's) own lay medical opinions. These errors, according to Plaintiff, were not harmless.

The Commissioner argues that the ALJ reasonably evaluated Dr. Bradley's opinions mainly because treating sources' opinions are never binding on an ALJ, because the ALJ did not substitute his own lay opinions in place of Dr. Bradley's, and because the record supports the numerous good reasons the ALJ provided for discounting Dr. Bradley's opinions.

Social Security Regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists. *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Opinions provided by treating physicians and psychologists are given controlling weight under the treating physician

11

rule if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record." *Id.* at 376 (citation omitted). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. The failure to comply with the agency's rules warrants a remand unless it is harmless error." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citations omitted).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions by stating "specific reasons for the weight placed on a treating source's medical opinions." *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*.

In the present case, ALJ Kenyon placed "some weight on the opinions provided by Dr. Bradley, to the extent that they support the above-described reduced range of sedentary work …," referring to his assessment of Plaintiff's residual functional capacity for a reduced range of sedentary work. (Doc. #6, *PageID* #79). The ALJ continued:

> However, Dr. Bradley also opined that the claimant would be absent from work twice per month and could only lift five pounds on a frequent basis. The objective medical evidence provides no basis

12

>> for this conclusion, and therefore, little weight is given to this portion of Dr. Bradley's assessment.

*Id*.

The first problem with the ALJ's evaluation of Dr. Bradley's opinion is that he did not first consider whether her opinion was entitled to controlling weight under the threating physician rule. Indeed, after setting forth the correct legal criteria for the treating physician rule, the ALJ provided no indication that he evaluated Dr. Bradley's opinions under that legal criteria. *See id*. Instead, the ALJ first assessed Plaintiff's residual functional capacity at step four of the sequential evaluation, then measured Dr. Bradley's opinions against his assessment of Plaintiff's residual functional capacity. This constituted error. Nothing in the Regulation, 20 C.F.R. § 416.927(c), used for evaluating medical source opinions supports this analytical approach. Instead, it describes the opposite: "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as…, your residual functional capacity…, the final decision for deciding such issue[] is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2). Similarly, the Regulations elsewhere explain that the ALJ's assessment of residual functional capacity is based on "all of the relevant medical and other evidence…." 20 C.F.R. § 416.945(a)(3). The Commissioner's pertinent Rulings likewise describe the role medical source opinions and other medical evidence plays in determining a claimant's Residual Functional Capacity. Social Security Ruling 96-8p requires

13

ALJs to assess residual functional capacity "based on all of the relevant evidence in the case records …," including, in part, "medical source statements." Soc. Sec. R. 96-8p, 1996 WL 374184, *5 (July 2, 1996). The Ruling that instructs ALJs how to weigh treating sources' medical opinions neither instructs nor hints that the Residual Functional Capacity informs the analysis of treating-source opinions. *See* Soc. Sec. R. 96-2p, 1996 WL 374188 (July 2, 1996).

These Rulings together with the Regulations instruct ALJs to weigh medical-source opinions and then assess—in light of the assigned weight—the claimant's Residual Functional Capacity. ALJ Kenyon took the opposite and erroneous analytical path by first assessing Plaintiff's residual functional capacity, then comparing Dr. Bradley's opinions to that assessment.

The ALJ also placed "little weight" on the opinions Dr. Bradley expressed in the Basic Medical form she completed in August 2013. (Doc. #6, *PageID* # 80). After describing Dr. Bradley's opinions, the ALJ reasoned:

> The conservative level of treatment the claimant has received to date is not consistent with an inability to perform any work. Further, Dr. Bradley's assessment, which included only postural limitations, is not consistent with an opinion that the claimant can perform no work activity.

*Id.* These reasons, plus the ALJ's previously quoted reasons, for placing little weight on Dr. Bradley's opinion fail to consider the intermittent nature of Plaintiff's multiple-sclerosis symptoms. The Social Security Administration's Program Operations Manual System recognizes, "Most cases of MS involve intermittent periods of symptoms and signs (exacerbation) followed by a period of improvement

14

(remission). Exacerbations vary in frequency, duration, character and severity. Remissions similarly vary in duration and the extent of improvement." http://policy.ssa.gov/poms.nsf/lnx/0424580015. More significantly for the present case, Dr. Bradley based her opinions on this type of intermittent symptomatology. She explained in the August 2013 Basic Medical form:

> During an MS exacerbation patient may have worsening arm or leg weakness. Usually with Treatment (i.e., IV steroids) these symptoms will resolve in 1-2 weeks. Currently, [he] has upper extremity paresthesis, and left side weakness.

(Doc. #6, *PageID* #532). The ALJ overlooked or ignored this explanation when evaluating Dr. Bradley's opinions. This allowed him to discount her for the reasons that Plaintiff was conservatively treated and that Dr. Bradley only assigned him postural limitations. Yet, there is nothing inconsistent between Dr. Bradley's opinions that Plaintiff cannot work and the conservative treatment he received during periods of remission and only having postural limitations. Indeed, the postural limitations Dr. Bradley identified and the conservative treatment the ALJ referenced say nothing probative about Plaintiff's work limitations during periods of exacerbation. Substantial evidence therefore fails to support the ALJ's reasons for discounting Dr. Bradley's August 2013 opinions. *See Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990) ("[I]n evaluating multiple sclerosis, or any other episodic disease, consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." (citing SSA Pub. 68–0424500, Neurological § 24580.015 Evaluation of Multiple Sclerosis (1988)).

The ALJ also failed to recognize that the record contains no treating or examining opinions that contradict or conflict with Dr. Bradley's opinion. In his assessment of Plaintiff's Residual Functional Capacity, the ALJ relied on some aspects of the opinions provided by two record-reviewing physicians in July and September 2013, respectively. Doing so, however, the ALJ did not weigh their opinions under any of the factors, as mandated by the Regulations. This constituted error. *See* 20 C.F.R. § 416.927(e); *see also* Soc. Sec. R. 96-6p, 1996 WL 374180, *2 (July 2, 1996).

Next, even if the ALJ correctly determined that Dr. Bradley's opinions were not entitled to controlling weight, his decision does not reflect that he continued to weigh Dr. Bradley's opinions under the remaining factors mandated by law. *See* 20 C.F.R. § 416.927(c); *see also* Soc. Sec. R. 96–2p, 1996 WL 374188 at *3-*4; *Gayheart,* 710 F.3d at 375–76. "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status nothwithstanding." *Rogers*, 486 F.3d at 242.

Accordingly, Plaintiff's Statement of Errors is well taken.[3]

## VII. Remand

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations

---

[3] In light of the above discussion, and the resulting need to remand this case, discussion of the parties' contentions about the ALJ's credibility findings is unwarranted.

might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether he was under a benefits-qualifying disability under the applicable five-step sequential evaluation

17

procedure, including, at a minimum, a re-assessment of his residual functional capacity and a re-consideration of the evidence at steps three, four, and five of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Percy Collins, Jr. was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Social Security Administration under sentence four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


January 24, 2017                               *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).